*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0453P (6th Cir.)
File Name: 03a0453p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

Nos. 03-5107/
5189/5192

MICHELLE WILLIAMS
(03-5107); TANISHA JONES
WARD (03-5189); ROBERT
KELLY, III (03-5192),
*Defendants-Appellants.*

_____

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 02-20151—Julia S. Gibbons, District Judge.

Argued and Submitted: October 21, 2003

Decided and Filed: December 23, 2003

Before: KEITH, DAUGHTREY, and GILMAN, Circuit
Judges.

_____

## COUNSEL

**ARGUED:** Bruce I. Griffey, OFFICE OF BRUCE IRWIN
GRIFFEY, Memphis, Tennessee, for Appellants. Tracy L.

Berry, ASSISTANT UNITED STATES ATTORNEY,
Memphis, Tennessee, for Appellee. **ON BRIEF:** Bruce I.
Griffey, OFFICE OF BRUCE IRWIN GRIFFEY, Memphis,
Tennessee, Mary C. Jermann, OFFICE OF THE FEDERAL
PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF
TENNESSEE, Memphis, Tennessee, Jerry Stokes, Memphis,
Tennessee, for Appellants. Tracy L. Berry, ASSISTANT
UNITED STATES ATTORNEY, Memphis, Tennessee, for
Appellee.

_____

## OPINION

_____

DAMON J. KEITH, Circuit Judge. Defendants-Appellants
Michelle Williams ("Williams") and Robert Kelly, III
("Kelly") appeal their sentences following the entry of guilty
pleas to identity theft, 18 U.S.C. § 1028(a)(7). Defendant-
Appellant Tanisha Jones Ward ("Ward") appeals her sentence
following the entry of a guilty plea to identity theft, 18 U.S.C.
§ 1028(a)(7), and making a false statement, 18 U.S.C.
§ 1001(a)(2). Williams, Kelly, and Ward were involved in a
scheme that involved the use of false identifying information
to obtain home loans. The district court found that the
enhancement in § 2B1.1(b)(9)(C)(i) of the 2002 Sentencing
Guidelines for "the unauthorized transfer or use of a means of
identification unlawfully to produce or obtain any other
means of identification" applied to Williams's and Kelly's
conduct. UNITED STATES SENTENCING GUIDELINES MANUAL
§ 2B1.1(b)(9)(C)(i) (2002). Due to *ex post facto* concerns, the
district court sentenced Kelly and Ward using the 1998
Sentencing Guidelines (in effect at the time of the crime)
rather than the 2002 Sentencing Guidelines (in effect at the
time of sentencing). Williams appeals the application of the
§ 2B1.1(b)(9)(C)(i) enhancement. Kelly appeals the use of
the 1998 Sentencing Guidelines, contending that the 2002
Sentencing Guidelines should be applied without the

§ 2B1.1(b)(9)(C)(i) enhancement. Ward appeals the district court's refusal to depart downward due to her family circumstances, aberrant behavior, and her relative culpability compared to the other defendants. For the reasons set forth below, we **AFFIRM** the sentences of Williams, Kelly, and Ward.

## I. FACTUAL BACKGROUND

From on or about September 25, 1998, and continuing to on or about June 21, 2000, Terrell Green, Marcus Martin, and Thomas Anthony Taylor provided false identifying information to persons who wanted to buy a house under a loan program administered by the Federal Housing Administration ("FHA"). The data included a social security number, employment information, and salary information. Purchasers such as Kelly and Williams signed loan documents containing the false information and submitted them to Community Mortgage Corporation ("CMC") for the federally guaranteed loans and the City of Memphis, Tennessee Division of Housing and Community Development for down payment assistance loans. On or about May 16, 2000, Williams received loans from CMC and the City of Memphis valued in excess of $59,000. On or about May 19, 2000, Kelly received over $90,000 in loans. Ward acted as the realtor in each of the loans. In addition, on or about June 21, 2000, Ward used a false social security number, which she received from Terrell Green, in order to apply for a FHA loan.

Williams entered a plea of guilty to violating 18 U.S.C. § 1028(a)(7), through her use of Larmont F. White's social security number, in order to commit the federal felony violations of social security fraud and making a false statement within the jurisdiction of an agency of the United States. On December 2, 2002, Williams filed objections to the presentence report. At the sentencing hearing, Williams argued that the two-point enhancement pursuant to § 2B1.1(b)(9)(C)(i) of the 2002 Sentencing Guidelines did not

apply to her conduct. The government supported the imposition of the enhancement because of Williams's purchase and use of someone else's social security number in order to obtain two separate loans. According to the government, the bank loan number is equivalent to false identification. Williams argued that the enhancement did not apply because she engaged in a single act - the signing of the loan documents containing the false information. Williams maintained that she purchased a loan package from Mr. Green and that she did not use the social security number in those documents to obtain additional false identification.

After hearing the arguments of the parties, the district court rejected Williams's position. According to the district court, § 2B1.1(b)(9) applied directly to the type of situation Williams presented. The district court stated:

> To elaborate further, with respect to the application of the guideline we've just been talking about, the court refers to the guideline itself. The commentary application note nine, which refers to the definition of means of identification, which is a very broad one, and encompasses a bank loan which we might not ordinarily think of as being included by that language, would note also the Application Notes 7(C)(i) and 7(C)(ii) and then the commentary background which discusses subsection (B)(9)(C) in some detail. It appears to me that that enhancement does apply.

J.A. at 159-160.

Kelly entered a guilty plea to the use of the social security number of Samuel Robert DeMoya. In objecting to the presentence investigation report, Kelly argued that the two-point enhancement for more than minimal planning was not appropriate. On December 6, 2002, Kelly supplemented his objections contending that the probation office erred in using the 1998 Sentencing Guidelines. Kelly contended that the

2002 Sentencing Guidelines should be used, but that the use of the 2002 Sentencing Guidelines should exclude the enhancement pursuant to § 2B1.1(b)(9)(C)(i).

At the sentencing hearing, Kelly conceded that the use of another's social security number created a potential for harm to that individual. Nonetheless, Kelly argued that the § 2B1.1(b)(9)(C)(i) enhancement applied only if the loan was in the name of the individual whose social security number was stolen. Kelly stressed the fact that he was trying to get a home loan for himself, not run a scam and split with the money. In the alternative, Kelly argued that, under the 1998 Sentencing Guidelines, the enhancement for more than minimal planning was not appropriate because the facts presented a simple case. The government supported the use of the 1998 Sentencing Guidelines due to *ex post facto* concerns. Specifically, the government contended that the use of the 2002 Sentencing Guidelines would require the enhancement proscribed in § 2B1.1(b)(9)(C)(i) as a result of the commentary background to § 2B1.1 and application notes 7(C)(i), 7(C)(ii), and 9 for that guideline section. The § 2B1.1(b)(9)(C)(i) enhancement would have put Kelly in a higher guideline range than would be applicable under the 1998 Sentencing Guidelines, even with the enhancement for more than minimal planning.

In finding that the 1998 Sentencing Guidelines applied, the district court rejected Kelly's attempt to prevent the application of § 2B1.1(b)(9)(C)(i) on the basis that Kelly used his own name rather than the name of the individual whose social security number he appropriated. According to the district court, the commentary application notes and the commentary background made clear that the enhancement would apply under the facts of the case at bar. The district court explained that even if the name was not used, there would still be harm to the credit of the person whose social security number was used. The district court found that the minimum offense level of 12 would apply in Williams's case.

On or about July 3, 2002, Ward entered a plea admitting to the use of the social security number of Allison Campbell and to making a false statement to a department of the United States. Unlike Williams and Kelly, Ward urged the district court to depart downward from the applicable guideline range by contending that her family circumstances were extraordinary, her criminal conduct was aberrant behavior, and she was less culpable than some of the other co-defendants. The government responded by asking the district court to recognize that the four-level enhancement received by the organizer of the activity provided adequate consideration for the difference between their roles in the criminal conduct. The government also noted that the conduct occurred over a two-year period and that Ward's lack of criminal history was already taken into account in determining the guideline range.

The district court found that the facts of Ward's case did not support a downward departure. In reaching its decision, the district court found that: Ward's family responsibilities were not so extraordinary as to suggest the need for a downward departure; the importance of payment of restitution did not override the need to serve a term of imprisonment; Ward was more culpable than the individual defendants who applied for loans themselves due to her integral role in the transactions; and the conduct was too repeated and extensive in terms of the period of time in order to constitute aberrant behavior. Further, the district court found that the aggregation of circumstances and factors was not sufficient to take the case "out of the heartland" and thereby justify a downward departure.

## II. DISCUSSION

In reviewing a district court's application of the Sentencing Guidelines, we "accept the findings of fact of the district court unless they are clearly erroneous and . . . give due deference to the district court's application of the guidelines to the

facts." 18 U.S.C. § 3742(e).   In light of *Buford v. United States*, 532 U.S. 59, 63-66 (2001), this court has held that our standard of review of a district court's application of provisions of the Sentencing Guidelines to the facts should be treated deferentially and should not be disturbed unless clearly erroneous. *United States v. Jackson-Randolph*, 282 F.3d 369, 389-90 (6th Cir.2002) (holding that the Supreme Court's reasoning in *Buford* leads to the use of a deferential standard of review in the application of the Sentencing Guidelines under circumstances involving fact-bound determinations).

A.   Section 2B1.1(b)(9)(C)(i) enhancement

On October 30, 1998, Congress enacted the Identity Theft and Assumption Deterrence Act of 1998 ("ITADA"), Pub. L. No. 105-318.  The ITADA amended the fraud chapter of title 18 of the United States Code to create a new crime prohibiting the unlawful use of personal identifying information, including, but not limited to, names, social security numbers, and credit card numbers.  Identity fraud involves the misappropriation of another person's personal identifying information. Criminals use this information to establish credit in their name, run up debts on another person's account, or take over existing financial accounts. The ITADA directed the Sentencing Commission to "review and amend the Federal sentencing guidelines and the policy statements of the Commission, as appropriate, to provide an appropriate penalty for each offense under section 1028 of title 18, United States Code, as amended by this Act." Identity Theft and Assumption Deterrence Act of 1998, Pub. L. No. 105-318 § 4(a), 112 Stat. 3007 (codified in 28 U.S.C. § 994 note).

Subsection 2B1.1(b)(9)(C) of the Sentencing Guidelines was implemented pursuant to Section 4 of the ITADA.  It focuses on an aggravated from of identity theft known as "affirmative identity theft" or "breeding," in which a

defendant uses another individual's name, social security number, or some other form of identification (the "means of identification") to "breed" (i.e., produce or obtain) new or additional forms of identification.   UNITED STATES SENTENCING GUIDELINES MANUAL § 2B1.1, cmt. background (2002).   Section 2B.1.1(b)(9)(C)(i) of the Sentencing Guidelines authorizes a two-level increase in a defendant's base offense level in cases in which the defendant has unlawfully used any means of identification without authorization  to produce or obtain any other means of identification. UNITED STATES SENTENCING GUIDELINES MANUAL § 2B1.1(b)(9)(C)(i) (2002).  If after the two-level increase, the offense level is less than level 12, then the offense level is to be increased to level 12. *Id.* The minimum offense level of 12 accounts for the seriousness of the offense as well as the difficulty in detecting the crime prior to certain harms occurring, such as a damaged credit rating or an inability to obtain a loan.  UNITED STATES SENTENCING GUIDELINES MANUAL § 2B1.1, cmt. background (2002). The minimum offense level also accounts for the non-monetary harm associated with these types of offenses, such as harm to the individual's reputation or credit rating, inconvenience, and other difficulties resulting from the offense. *Id.*

The sentencing court found that the § 2B1.1(b)(9)(C)(i) enhancement applied because Williams and Kelly used a means of identification, i.e., a social security number of another, to obtain another means of identification, i.e., a bank loan number.  Appellants argue that the enhancement was inapplicable to their conduct. Specifically, Williams argues that the bank loan number is not the equivalent of a false identification, and that she purchased the entire loan package, not a social security number.  Thus, according to Williams, the social security number in those documents was not used to obtain additional false identification. Kelly argues that the enhancement does not apply to his conduct because he obtained the bank loan in his own name.  Each of these arguments will be addressed in turn.

"'Means of identification' has the meaning given that term in 18 U.S.C. § 1028(d)(4), except that such means of identification shall be of an actual (*i.e.*, not fictitious individual), other than the defendant or a person for whose conduct the defendant is accountable under § 1B1.3 (Relevant Conduct)." UNITED STATES SENTENCING GUIDELINES MANUAL § 2B1.1, cmt. n. 7(A) (2002). Under 18 U.S.C. § 1028(d)(4), "the term 'means of identification' means any name or number that may be used, *alone or in conjunction with any other information*, to identify a specific individual." 18 U.S.C. 1028(d)(3) (emphasis added). "Means of identification" includes, inter alia, a name, social security number, unique electronic identification number, or telecommunication identifying information or access device as defined in 18 U.S.C. § 1029(e). 18 U.S.C. § 1028(d)(3)(A)-(D). "[T]he term 'access device' means any . . . account number . . . or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds . . ." 18 U.S.C. § 1029(e)(1).

In providing guidance for the applicability of § 2B1.1(b)(9), the Sentencing Commission set forth examples of conduct to which the subsection would apply. The first example, which is most applicable to this situation, provides for the imposition of the enhancement when "[a] defendant obtains an individual's name and social security number from a source . . . and obtains a bank loan in that individual's name. In this example, the account number of the bank loan is the other means of identification that has been obtained unlawfully." UNITED STATES SENTENCING GUIDELINES MANUAL § 2B1.1, cmt. n.7(C)(ii) (2002). In the second example, a defendant obtains an individual's personal information, such as a name and address, and "applies for, obtains, and subsequently uses a credit card in that individual's name. In this example, the credit card is the other means of identification that has been obtained

unlawfully." UNITED STATES SENTENCING GUIDELINES MANUAL § 2B1.1, cmt. n. 7(C)(ii)(II) (2002).

The Sentencing Guidelines also set forth examples of conduct to which subsection (b)(9)(C)(i) does not apply. The first example involves a defendant's use of a credit card from a stolen wallet "only to make a purchase." UNITED STATES SENTENCING GUIDELINES MANUAL § 2B1.1, cmt. n. 7(C)(iii)(I). The Sentencing Guidelines make clear that in that case, the defendant "has not used the stolen credit card to obtain another means of identification." *Id.* The second example applies to a defendant who "forges another individual's signature to cash a stolen check. Forging another individual's signature is not producing another means of identification." UNITED STATES SENTENCING GUIDELINES MANUAL § 2B1.1, cmt. n. 7(C)(iii)(II).

In this case, Williams and Kelly each used the social security number of someone else to obtain home loans in their own names. Kelly argues that the bank loan number is not another "means of identification." As a bank loan number is an account number that can be used to obtain money, however, it is a "means of identification" as that term is defined in 18 U.S.C. § 1028. Further, the first example in the commentary specifically provides that "the account number of the bank loan is the other means of identification that has been obtained unlawfully." UNITED STATES SENTENCING GUIDELINES MANUAL § 2B1.1(b)(9)(C)(i), cmt. n. 7(C)(ii)(I). Accordingly, Kelly's argument that a bank loan number is not a "means of identification" lacks merit.

Williams and Kelly both argue that their situation is different from the one in the example about the bank loan because they obtained the loans in their own names and, therefore, did not use the social security number and name of someone else. Thus, according to Williams and Kelly, their situation is more analogous to making a purchase with a stolen credit card. While the defendant in the example used

two means of identification in order to obtain the bank loan, the definition of "means of identification" provided in 18 U.S.C. § 1028 does not require that a name and social security number be used together in order for them to become a "means of identification." To the contrary, it states that any name or number may be used "*alone or in conjunction with any other information*, to identify a specific individual." 18 U.S.C. 1028(d)(3) (emphasis added). A social security number is clearly defined as a "means of identification" and, thus, its use to obtain a loan falls within the scope of the statute and the Sentencing Guidelines even if another form was not used. 18 U.S.C. § 1028(d)(3).

Further, unlike the use of a stolen credit card to make a purchase, obtaining a bank loan involves the opening of a new line of credit. Opening a new line of credit, as opposed to using a line of credit that already exists, is what distinguishes the first set of examples, where the enhancement applies, from the second set of examples, where the enhancement does not apply. In the examples where the enhancement applies, a bank loan that did not otherwise exist is created and a new credit card is obtained. In the examples where the enhancement does not apply, the defendant used an existing credit card to make a purchase and cashed a check from an existing bank account. Thus, while the use of someone's credit card to make a purchase is a punishable offense, the nature of the harm is different from that which results from using someone's identifying information to establish new credit.

Finally, Williams's argument that she bought a loan package and not a social security number and, thus, that her conduct is not within the purview of the enhancement, is similarly without merit. Whether Williams bought the social security number as part of a package that was used to procure a loan or bought the social security number and used it to fill out a loan application is irrelevant. The harm to the person whose social security number was used is the same in both

instances. Williams knew that the loan package included a social security number other than her own and that the social security number would be used to obtain the loan. Accordingly, the sentencing court did not err in finding that the § 2B1.1(b)(9)(C)(i) enhancement applied to Williams's and Kelly's conduct.

B.   *Ex post facto* considerations

If a district court determines that use of the version of the Sentencing Guidelines in effect on the date of sentencing would violate the *ex post facto* clause, the version of the Sentencing Guidelines in effect on the date the offense of conviction was committed should be used. UNITED STATES SENTENCING GUIDELINES MANUAL § 1B1.11(b)(1) (2002). In this case, Kelly was sentenced on January 17, 2003. The facts revealed that Kelly used the fraudulent social security number when he applied for a home loan on or about May 22, 2000. The district court applied the 1998 Sentencing Guidelines to Kelly's conduct because it determined that the 2002 Sentencing Guidelines would result in a higher offense level. The court's finding was based on the fact that the § 2B1.1(b)(9)(C)(i) enhancement would apply if the 2002 Sentencing Guidelines were utilized. With the enhancement, the adjusted offense level using the 2002 Sentencing Guidelines is 12 while the 1998 Sentencing Guidelines results in an offense level of 9. As previously discussed, the § 2B1.1(b)(9)(C)(i) enhancement was applicable to Kelly's conduct. Accordingly, the district court did not err in using the 1998 Sentencing Guidelines due to *ex post facto* concerns.

C.   District court's refusal to grant Ward's downward
     departure

Generally, we will not "review a district court's refusal to exercise its discretion to grant a downward departure." *United States v. Ridge*, 329 F.3d 535, 544 (6th Cir. 2003). We do have jurisdiction, however, to review a district court's

belief "that it lacked any authority to depart downward as a matter of law." *Id.* (quoting *United States v. Ebolum*, 72 F.3d 35, 37 (6th Cir.1995)). We review *de novo* whether the district court was aware of its authority to make a downward departure, examining the transcript of the sentencing hearing to make this determination. *Id.* We presume that the sentencing court has properly exercised its discretion when it decides that a departure is not warranted, as "there is no duty on the trial judge to state affirmatively that he knows he possesses the power to make a downward departure, but declines to do so." *United States v. Byrd*, 53 F.3d 144, 145 (6th Cir.1995).

In its introduction to the Sentencing Guidelines, the Sentencing Commission states that it "intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." UNITED STATES SENTENCING GUIDELINES MANUAL ch. 1, pt. A, subpt. 4(b) (2002). By statute, a district court may sentence outside the prescribed guideline range if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); UNITED STATES SENTENCING GUIDELINES MANUAL § 5K2.0 (2002).

In this case, a *de novo* review of the transcript from Ward's sentencing hearing reveals that the district court explicitly recognized that it possessed the discretion to depart downward. The government argued that "while the court does have the ability to give a downward departure in this case, that the conduct is not outside the heartland." J.A. at 250. After defense counsel's response to the government's

argument, Judge Gibbons stated: "You know, I don't really have a lot of flexibility in this case. And that doesn't mean I don't recognize my ability to depart downward, because I do." J.A. at 251. After consideration of all of Ward's arguments for downward departure, Judge Gibbons stated:

> The factors are just not here for a downward departure that take this case out of the norm of cases. A number of the factors that you've mentioned are already covered in the guidelines, a number of others. The facts in this case just don't warrant a downward departure on that basis, even when all the factors are considered together.

J.A. at 255. As the sentencing court was aware of its authority to depart, Ward lacks a basis to challenge the sentencing court's denial of her motion for a downward departure.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the sentences of Williams, Kelly, and Ward.