[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 7, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-16121

_____

D.C. Docket No. 03-60105-CR-KAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JENNIFER AUGUSTE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(December 7, 2004)**

Before HULL and MARCUS, Circuit Judges, and MILLS[*], District Judge.

RICHARD MILLS, District Judge:

_____

[*] Honorable Richard Mills, United States District Judge for the Central District of
Illinois, sitting by designation.

A question of first impression.

But plain language prevails.

Affirmed.

## I. FACTS

In April 2002, American Express employee Tamika Lawson provided Jennifer Auguste with the account number of American Express customer D.K. Shellman. On April 6, 2002, Auguste had herself added to Shellman's account as a secondary cardholder and changed the account's address from Denver, CO to Miami, FL so that she could receive a credit card in her name.

Between April 23 and 27, Auguste made sixteen purchases on Shellman's account totaling $11,429.31. Lawson also accessed five other American Express accounts. On each occasion, Auguste was added to the accounts as a secondary cardholder and a change of address was requested in order for her to get a card. One of those accounts belonged to Richard Hull. Auguste charged $600 to his account and transferred his credit balance of $31,410.19 for her use.

The United States Secret Service began investigating this fraudulent activity soon after it occurred. Agents interviewed Lawson on May 22, 2002. She admitted to appropriating American Express account information and providing it to Auguste. Agents interviewed Auguste and she told them that she obtained an

2

American Express card for Shellman's account with the intent of "maxing it out."

Auguste pled guilty to one count of conspiracy to commit credit card fraud and one count of credit card fraud. See 18 U.S.C. § 1029(b)(2); 18 U.S.C. § 1029(a)(2); and 18 U.S.C. § 2, respectively. Auguste's crimes resulted in a base offense level of six. See United States Sentencing Guideline § 2B1.1. The district court imposed a six-level enhancement due to the fact that Auguste's crimes resulted in a loss of $43,439.50. See U.S.S.G. § 2B1.1(b)(1)(D)(stating that a six-level enhancement applies where amount of loss exceeds $30,000).

The court also added a two-level enhancement under U.S.S.G. § 2B1.1(b)(9)(C)(i) because Auguste's offense involved "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification." Auguste objected to the imposition of the two-level enhancement. The district court ruled against her, but it found that she was entitled to a two-level downward adjustment for acceptance of responsibility.

The court determined that Auguste had a total offense level of twelve and a criminal history category of II. This resulted in a sentencing guideline range of twelve to eighteen months in prison. The court sentenced Auguste to fourteen months in prison.

Auguste timely appealed the district court's imposition of the two-level

enhancement. Her appeal raises an issue of first impression.

## II. STANDARD OF REVIEW

For sentencing issues, this Court reviews a district court's factual findings for clear error and its application of the guidelines de novo. See United States v. Miranda, 348 F.3d 1322, 1330 (11th Cir. 2003).

## III. ANALYSIS

United States Sentencing Guideline § 2B1.1(b)(9)(C)(i) requires a two-level enhancement where an offense involved "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any means of identification." See U.S. Guideline Commission Guideline Manual § 2B1.1(b)(9)(C)(i) (Nov. 1, 2002 & 2003 Supp.). "Means of identification" includes "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." See 18 U.S.C. § 1028(d)(3) (2000). It also includes "access devices," a term that encompasses any card or account number "that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instruction)." See § 1029(e)(1).

In its commentary to § 2B1.1(b)(9)(C)(i), the Sentencing Commission

provided two examples of conduct where the two-level enhancement applies and two examples where it is inapplicable. But none of the examples contemplates a situation where a defendant adds her own name to a victim's existing line of credit as a purported legitimate secondary cardholder. See U.S.S.G. § 2B1.1(b)(C)(i) at n. 7(C)(ii)(I),(II) and 7(C)(iii)(I)-(II). Moreover, there is no caselaw that addresses this scenario.

Yet the lack of relevant application notes and caselaw[1] is of no moment. What matters is the plain language of § 2B1.1(b)(9)(C)(i). Under that subsection, a court *must* apply a two-level enhancement if an offense involved "the unauthorized transfer or use of any means of identification unlawfully to produce

---

[1] The closest Auguste comes to offering relevant caselaw is her citation to United States v. Williams, 355 F.3d 893 (6th Cir. 2003). In Williams, the defendants argued that a two-level enhancement was improper under §2B1.1(b)(9)(C)(i) because they obtained unauthorized lines of credit in their own names rather than in the name of some victim. In rejecting the defendants' arguments, the Sixth Circuit distinguished the application notes by stating that:

> "[i]n the examples where the enhancement does not apply, the defendant used an existing credit card to make a purchase and cashed a check from an existing bank account. Thus, while the use of someone's credit card to make a purchase is a punishable offense, the nature of the harm is different from that which results from using someone's identifying information to establish new credit."

Id. at 900.

The court's comments in Williams are inapplicable because Auguste did not simply use a credit card from a stolen wallet or forge a name on a check. Rather, she obtained account information, added her name as a secondary cardholder, and had credit cards issued in her own name via the victim's line of credit. Even though she used existing lines of credit, she used the victims' account information to obtain new credit cards. As we shall see, this fact is crucial.

or obtain any means of identification". Id.

In this case, Lawson got Shellman's and Hull's American Express account information and passed it along to Auguste without their permission. Auguste capitalized on this unauthorized transfer by using the information to obtain credit cards under the victim's lines of credit. Because account numbers uniquely identify a cardholder, Auguste's receipt of Shellman's and Hull's account information gave her a "means of identification" for purposes of 18 U.S.C. § 1028(d)(3). This fact alone warrants the imposition of a two-level enhancement under § 2B1.1(b)(9)(C)(i).

Auguste fails to recognize this. Instead, she claims that § 2B1.1(b)(9)(C)(i) should not apply because she used her own name on the credit cards and she used existing lines of credit rather than opening new ones. None of this helps Auguste. By getting her own name placed on the victims' accounts, Auguste simply provided evidence that she used one means of identification (account numbers) to obtain another (credit cards). Regardless of whether the credit cards were used in conjunction with a new line of credit she established or an existing one that belonged to a victim, the fact remains that Auguste had no authority to obtain the credit cards.

Accordingly, a two-level enhancement was appropriate under §

6

2B1.1(b)(9)(C)(i).

## IV. CONCLUSION

Ergo, we AFFIRM the district court's decision and sentence.