NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0693n.06
Filed: November 13, 2008

07-2147

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| TARIQ F. HAMAD, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MARTIN, BATCHELDER, and DAUGHTREY, Circuit Judges.

**PER CURIAM.** In this sentencing appeal, defendant Tariq F. Hamad[1] challenges the district court's application of a two-level enhancement, both the procedural and the substantive reasonableness of his 110-month sentence, and the correctness of a portion of the court's restitution order. We find no basis on which to overturn the sentence and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

From approximately January 2001 until June 2003, Tariq Hamad and his relative, Kalil Khalil, obtained mortgage loans using false and fraudulent information. The loan

---

[1] The defendant was indicted as Tariq F. Hamad, although it appears from other documents in the record that his surname is actually spelled Hamed.

applications contained the names and social security numbers of family members and acquaintances without their knowledge or permission and referred to non-existent properties. In order to facilitate the fraud, the defendant used his own mortgage company, created fictional title and appraisal companies, and fraudulently used the names of actual appraisal companies. The defendant invested the proceeds of the mortgage loan in the stock market and obtained additional loans to make payments on the mortgages when he did not make money in the stock market. The total losses to financial institutions amounted to $15,542,603. In addition, three individuals claimed lost income resulting from the defendant's fraudulent use of the names of their appraisal and title companies.

The government charged Hamad with wire fraud in a criminal complaint filed in the Eastern District of Michigan, which the district court dismissed without prejudice upon the government's motion. The defendant agreed to waive indictment and proceed by information. Hamad pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343 pursuant to a Rule 11 plea agreement.

The district court judge applied a two-level sentence enhancement based on identity theft, resulting in a total offense level of 31 and a guidelines range of 108-135 months. The defendant contested the application of both the sentencing enhancement for identity theft and for losses of more than $7,000,000, arguing that such dual consideration constituted impermissible double counting. The defendant also argued that the district court should depart below the sentencing guidelines range due to his extraordinary

acceptance of responsibility, assistance to the government, and personal history and characteristics, including his charity work and his important role in the community. The district judge rejected these arguments and imposed a sentence of 110 months' imprisonment, to be followed by three years of supervised release. The district court also ordered Hamad to pay $11,884,247 in restitution, including a payment of $320,000 to EDI Appraisal Services, Inc., a payment that the defendant opposed.

## DISCUSSION

### Identity Theft Enhancement Issues

The defendant challenges the district court's application of the two-level sentencing enhancement for identity theft on two grounds: first, that a mortgage loan is not a means of identification within the guideline's definition and, second, that application of the enhancement is a form of impermissible double counting. We review *de novo* a district court's legal conclusion regarding application of the guidelines. *See United States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir. 2005).

Sentencing Guideline § 2B1.1(b)(9)(C)(i) (2002) provides that if the offense involved "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification," the base offense level is to be increased by two. "'Means of identification' has the meaning given that term in 18 U.S.C. § 1028(d)(4), except that such means of identification shall be of an actual (*i.e.*, not fictitious) individual, other

than the defendant or a person for whose conduct the defendant is accountable under § 1B1.13 (Relevant Conduct)." U.S.S.G. § 2B1.1 cmt. n.7(A) (2002). "Means of identification" is defined by 18 U.S.C. § 1028(d)(4) as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any— (A) name, social security number, date of birth . . . or (D) . . . access device (as defined in section 1029(e))." 18 U.S.C. § 1028(d)(4)(A)-(D) (2002). "Access device" is defined as including an "account number . . . or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds." 18 U.S.C. § 1029(e)(1) (2002).

The sentencing guidelines provide examples of the type of conduct to which § 2B1.1(b)(9)(C)(i) applies. *See* U.S.S.G. § 2B1.1 cmt. n.7(C). The enhancement applies when "[a] defendant obtains an individual's name and social security number from a source . . . and obtains a bank loan in that individual's name. In this example, the account number of the bank loan is the other means of identification that has been obtained unlawfully." *Id.* at n.7(C)(ii)(I). The enhancement also applies if the defendant uses another individual's information to obtain a "credit card in that individual's name. In this example, the credit card is the other means of identification that has been obtained unlawfully." *Id.* at n.7(C)(ii)(II). In contrast, the enhancement does not apply when a defendant "uses a credit card from a stolen wallet only to make a purchase" or "forges another individual's signature to cash a stolen check." *Id.* at n.7(C)(iii)(I)-(II). In these examples, the defendant has not

used the stolen credit card or the forged check to obtain another means of identification. *See id.*

In this case, Hamad used the names and social security numbers of his relatives and acquaintances without their consent in order to obtain mortgage loans. The names and social security numbers are obviously "means of identification" and satisfy the first part of the enhancement: "unauthorized transfer or use of any means of identification." U.S.S.G. § 2B1.1(b)(9)(C)(i). The question on appeal is whether a mortgage loan qualifies as a "means of identification," such that the defendant used the names and social security numbers "unlawfully to produce or obtain any other means of identification." *Id.*

The defendant argues that "means of identification" are limited to names or numbers, and that a mortgage loan is not a "means of identification" as contemplated by the guidelines. We have considered and rejected a similar argument in interpreting the same sentence enhancement in *United States v. Williams*, 355 F.3d 893 (6th Cir. 2003). In *Williams*, the defendants used false social security numbers to obtain loans from Community Mortgage Corporation, purportedly for use as down payments for new homes. *See id.* at 895-96. The defendants appealed from the district court's application of the § 2B1.1(b)(9)(C)(i) sentence enhancement, arguing that a bank loan number is not a means of identification. *See id.* at 898. We relied upon the first example provided in the commentary and affirmed their sentences, holding that "[a]s a bank loan number is an

account number that can be used to obtain money . . . it is a 'means of identification' as that term is defined in 18 U.S.C. 1028." *Id.* at 899.

The mortgage loans fraudulently obtained by Hamad are associated with account numbers and were used by the defendant to obtain money, bringing them within the definition of "means of identification." This conclusion finds additional support in the history of the enhancement, implemented pursuant to the Identity Theft and Assumption Deterrence Act of 1998, which is specifically concerned with misappropriation of an individual's identifying information to establish credit in his or her name. *See Williams*, 355 F.3d at 898 (citing Identity Theft and Assumption Deterrence Act of 1998, Pub. L. No. 105-318 § 4(a), 112 Stat. 3007). The background to the sentencing guideline references particular types of harm to victims resulting from identity theft, including damaged credit rating and inability to obtain a loan. *See* U.S.S.G. § 2B1.1 cmt. background (2002). The defendant's conduct in this case is exactly what this enhancement targets. He fraudulently used one form of identification in order to create a line of credit—a means of identification—in the individual's name.

The defendant next argues that application of the § 2B1.1(9)(C)(i) enhancement constitutes impermissible double-counting because the conduct relevant to that enhancement is the same conduct underlying the base offense. In this circuit, impermissible double-counting "occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v. Farrow*, 198 F.3d

179, 193 (6th Cir. 1999) (citing *United States v. Perkins*, 89 F.3d 303, 310 (6th Cir. 1996)). "[N]o double counting occurs where, although the conduct underlying two enhancements is the same, a single guideline provision requires the district court to increase the defendant's sentence based on different *aspects* of the defendant's conduct." *Perkins*, 89 F.3d at 310.

In the instant case, even though the defendant's conduct constituted fraudulent use of other people's social security numbers to obtain mortgage loans, the base offense of § 2B1.1 covers a wide range of larceny and other forms of theft. Thus, a defendant sentenced under § 2B1.1 need not have obtained a means of identification by the fraudulent use of another means of identification. Because the § 2B1.1(9)(C)(i) sentence enhancement applies to conduct more specific than the general base offense, applying the two-level enhancement to Hamad's base offense level does not constitute impermissible double counting.

**Reasonableness of Prison Sentence**

The defendant next challenges his sentence as procedurally and substantively unreasonable. We review the sentencing decision of the district court for abuse of discretion. *See Gall v. United States*, 128 S.Ct. 586, 594 (2007). In conducting our review of the district court's sentence, we must

> first ensure that the district court committed no significant procedural error,
> such as failing to calculate (or improperly calculating) the Guidelines range,

> treating the Guidelines as mandatory, failing to consider § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range. Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.

*Gall*, 128 S.Ct. at 597. The defendant argues that the district court failed to consider meaningfully and to address all factors required by 18 U.S.C. § 3553(a).

After calculating the applicable guidelines range, the district court may not simply presume that the range is reasonable, but must conduct an "individualized assessment based on the facts presented." *Gall*, 128 S.Ct. at 596-97. With the guidelines as a "starting point and the initial benchmark," the district court must "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 596. In order to allow for meaningful appellate review, the district court must also "adequately explain the chosen sentence." *Id.* at 597 (citing *Rita v. United States*, 127 S.Ct. 2456 (2007)). "The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 127 S.Ct. at 2468 (citing *United States v. Taylor*, 487 U.S. 326, 336-37 (1988)).

After ruling on the defendant's criminal history level and the applicability of the identity theft sentence enhancement, the district judge in this case stated the applicable guidelines range. The district judge noted the advisory nature of the guidelines, but went

on to discuss the value of following the guidelines, noting the collective wisdom of the

drafters and the increase in uniformity gained by following the guidelines.  The district

judge then proceeded to review orally the § 3553(a) factors:

> [O]ne of the factors that I must take into account is the nature and circumstances of the offense and the offender himself.
>
> . . . .
>
> The nature of the crime itself is a serious one. . . . I must consider the nature of the sentence in order to provide a just punishment; that is, to promote respect for the law and to mete out justice with respect to the Defendant and his admitted conduct in the case.
>
> I also must be concerned about the deterrent effect of the sentence and that is a factor that I think weighs heavily in this regard.
>
> . . . .
>
> . . . I must fashion a sentence that addresses any special needs that the Defendant might have . . . .

The district judge stressed the seriousness of the offense, specifically noting the

substantial harm to victims of the offenses and the millions of dollars lost.  Although the

district judge expressed his belief that Hamad would not commit wire fraud in the future,

the judge considered the broader deterrent effect of the sentence, explaining that the

sentence would not be reduced "because of the risk of the message that might send to

others."  The district judge also discussed the defendant's arguments for a reduced

sentence based on his acceptance of responsibility and cooperation with the government,

stating:

> Now I have listened to Mr. Hiyama today and his statements with respect to the cooperation that the Defendant exhibited in terms of his elaboration on the extent of the scheme and the amount of the loss and assistance to the Government in terms of identifying victims and so forth and I am persuaded by that argument that a sentence at the lower end of the guideline range is more appropriate.

After discussing the § 3553(a) factors and explaining the basis for his sentence, the district judge sentenced the defendant near the low end of the guidelines, to 110 months in prison and three years of supervised release.

The defendant argues that the district judge did not adequately address all of his arguments for why a lower sentence would be appropriate – specifically, that the judge did not mention Hamad's charity work or the 27 letters of support written by members of his family and community. The defendant alleges that the district judge felt "straight-jacketed" by the guidelines, as evidenced by his failure to address the individual characteristics of the defendant or adequately explain the chosen sentence.

Because the judge sentenced the defendant within the guidelines range, a long explanation was not required. The Supreme Court addressed the reasonableness of a within-guidelines sentence in *Rita v. United States*, 127 S.Ct. 2456, 2468 (2007), and concluded that "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." As long as "the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively." *Id.* at 2469. The Sixth Circuit

recently affirmed a within-guidelines sentence as procedurally reasonable where the district judge did not provide a lengthy explanation, but mentioned the relevant § 3553(a) factors and demonstrated an understanding of the defendant's arguments. *See United States v. Vonner*, 516 F.3d 382, 387-88 (6th Cir. 2008) (*en banc*).

In this case, the district judge clearly considered and addressed the arguments made by the defendant. Even though the district judge did not expressly mention the character letters or the defendant's charity work, he made clear that he had "reviewed this case and considered all of the submissions of Counsel." Because the defense attorney twice mentioned the judge taking the time to read the defendant's sentencing memo and character letters, it is reasonable to assume that the judge intended to reference the letters when he said that he "considered all of the submissions of Counsel." The district judge provided adequate explanation of his thought process behind the sentence by discussing the severity of the crime, the impact to victims, and the need to deter others and maintain uniformity. The district judge also explained that he initially intended to sentence the defendant "right around the midpoint of the guidelines" and changed his mind due to the defendant's arguments, making clear that he did take the defendant's arguments into account by ultimately sentencing him near the low end of the guideline range.

The defendant also briefly challenges his sentence as substantively unreasonable for failing to take into account his particular history and characteristics. Appellate courts review sentences for abuse of discretion, *see Gall*, 128 S.Ct. at 594, and in this circuit we

apply a presumption of reasonableness to a within-guidelines sentence. *See Vonner*, 516 F.3d at 389. For the reasons explained above, the district court judge did appropriately address the defendant's personal history and characteristics, and the defendant has not overcome the presumption of reasonableness or demonstrated that his sentence of 110 months was an abuse of discretion.

## Restitution

The defendant challenges the award of $320,000 in restitution to EDI Appraisal Services, Inc., as speculative and as violating his right to a jury under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Appellate courts review restitution awards with a bifurcated standard of review. *See United States v. Wood*, 364 F.3d 704, 714 (6th Cir. 2004). "We review de novo whether a restitution order is permitted under the law. If it is, then the amount of restitution ordered is reviewed under the 'abuse of discretion' standard." *Id.* (citations omitted).

The district court ordered mandatory restitution in the amount of $11,884,247 pursuant to 18 U.S.C. § 3663A. Mandatory restitution applies "in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense . . . that is . . . an offense against property under this title, including any offense committed by fraud or deceit; . . . and in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1). "Victim" is defined as "a person directly

and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). The victim's losses are to be determined by the court and resolved by a preponderance of the evidence. *See* 18 U.S.C. § 3664(e)—(f)(1)(A).

Terry Hanning, owner of EDI Appraisal Services, Inc., submitted a letter to the district court summarizing his experiences following the defendant's misappropriation of his name. After the defendant forged Hanning's name to fraudulent appraisals, a number of banks removed EDI Appraisal Services from their list of approved appraisers. The State of Michigan Appraisal Licensing department brought fraud charges against Hanning, and he alleges that his reputation has been permanently damaged. Hanning alleges that his business has suffered as a result and points to the decreased income of EDI Appraisal Services. The average gross income for the three years prior to the defendant's use of EDI Appraisal Services's name was $357,000, but the average gross income for the three years after the fraudulent appraisals dropped to $264,917. Based on this letter, the district court judge found by a preponderance of the evidence that EDI Appraisal Services was a victim with losses of $320,000.

The defendant challenges this finding, arguing that the evidence is speculative and insufficient to establish either his victim status or his amount of damages. The defendant alleges that EDI Appraisal Services's lost revenues may be due to factors other than his use of the company's name on his fraudulent mortgage applications and that additional

support is required.  However, the district court judge directly addressed the defendant's argument, stating:

> I think the argument that the Defense makes with respect to speculativeness has to do with the fact that there may be other factors that caused the reduction in his annual income as an appraiser other than simply the harm caused by the theft of his identity by the Defendant in this case, and indeed, one only needs [to] read the paper with respect to what's happening in the economy and the housing market to conclude that perhaps the volume of transactions is considerably less, but I'm satisfied from the letter that Mr. Hanning was a respected appraiser who was near the top of his game with respect to reputation in the business and would have been called upon to perform appraisals on the transactions that did occur, and therefore, I'm satisfied that the amount of $320,000 reflects an actual loss to him as a result of the conduct of the Defendant in this case, and so I will make a determination of that $320,000 [b]e included in the restitution figure that I will ultimately determine in this case.

Hanning submitted evidence demonstrating a loss in income after the defendant's use of his company's name.  The district court judge was entitled to rely upon that letter and Hanning's statement in court to find that he was a victim and that he lost $320,000 in revenue as a result of the defendant's scheme.  "An abuse of discretion occurs when the reviewing court is left with the 'definite and firm conviction that the trial court committed a clear error of judgment.'" *United States v. Hunt*, 521 F.3d 636, 648 (6th Cir. 2008) (quoting *Dubay v. Wells*, 506 F.3d 422, 431 (6th Cir. 2007)).  In this case, the district court judge had sufficient evidence to support his conclusion and, therefore, did not abuse his discretion in awarding Hanning $320,000 in restitution.

The defendant argues that because Hanning's loss of $320,000 was not a fact to which he admitted or a fact found by a jury, the restitution award violates *Apprendi*, which held that all facts which increase the maximum sentence be admitted by the defendant or found by a jury. However, this court found in *United States v. Sosebee*, 419 F.3d 451, 461-62 (6th Cir. 2005), that the ruling in *Apprendi* does not apply to restitution orders because restitution statutes do not specify a statutory maximum and because the restitution statute "*mandates* that a judge exercise his or her discretion." Therefore, the restitution order in this case violates neither *Apprendi* nor the defendant's right to a trial by jury.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court in its entirety.