**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0735n.06

No. 09-5734

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

**Nov 22, 2010**

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff – Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| ROBIN LEE JOHNSON, | ) | |
| | ) | |
| Defendant – Appellant. | ) | |

Before:  NORRIS, ROGERS, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.**  Robin Lee Johnson (Johnson) was convicted by a jury of one count of conspiracy to defraud a financial institution, in violation of 18 U.S.C. § 371, and six counts of bank fraud, in violation of 18 U.S.C. § 1344.  She appeals her eighteen-month sentence. We vacate and remand for re-sentencing.

**I**

In early 2007, Bobby Earl Turner approached defendant Johnson and offered her $1,000 to participate in a bank-fraud scheme.  Johnson agreed.  Turner identified a Wachovia Bank account registered to a Robin L. Johnson (Robin L.)  and arranged for the address and date of birth on the account to be changed to match Johnson's.  On August 17, 2007, Turner took Johnson to a Bank of

1

America branch and instructed her to open an account using her own name and social security number. He then took Johnson to a Wachovia Bank branch and had her wire $40,000 from Robin L.'s account to the newly-opened Bank of America account. The next day, Johnson and Turner visited several Bank of America branches, making withdrawals of approximately $28,000. Turner gave Johnson $500. At some later point, Turner gave Johnson a Wachovia credit card in the name of Robin L. Johnson and took Johnson to a Mississippi casino, where she used the credit card to obtain $9,000 in cash advances.

## II

Johnson's base offense level was seven. The Presentence Report (PSR) applied a six-level enhancement because the loss was greater than $30,000 but less than $70,000, and a two-level enhancement pursuant to § 2B1.1(b)(10)(C)(i) for the unauthorized transfer/use of a means of identification to produce another means of identification. The § 2B1.1(b)(10)(C)(i) enhancement was based on Johnson's use of her own identification to open an account in the name of another person. With a criminal history category of I and an offense level of fifteen, Johnson's Guidelines range was eighteen to twenty-four months' imprisonment.

Johnson objected to the application of the § 2B1.1(b)(10)(C)(i) enhancement because she used her own identifying information in the course of the bank fraud, not the identification of another. The Government had no objections to the PSR. The Probation Office responded to Johnson's objections, stating that the enhancement was appropriate because Johnson "opened a Bank of America account in the name of Robin L. Johnson without the authorization of Robin L.

Johnson."  The response also noted that Johnson was given a Wachovia credit card in Robin L.'s name.

At sentencing, the district court questioned Johnson about the use of the Wachovia credit card.  Through counsel, Johnson admitted that the card was issued to Robin L. However, Johnson stated that the card was unrelated to the Wachovia bank account, and reiterated that the enhancement did not apply because she did not use the information of another person.  The Government conceded that the § 2B1.1(b)(10)(C)(i) enhancement did not apply to Johnson's opening of a bank account in her own name, but argued that it should apply to the use of the credit card.  The district court found that the two-level enhancement applied based on the use of the credit card.   Thus, the court ultimately accepted the PSR-calculated Guidelines range.

The court considered the § 3553(a) factors before determining that Johnson should be sentenced at the low end of the Guidelines range.  She appeals, challenging the application of a two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(10)(C)(i), and asserting that the district court imposed an unreasonable sentence.

### III

Johnson's challenge to the district court's application of § 2B1.1(b)(10)(C)(i) is one of procedural reasonableness.  A sentence is unreasonable if it contains "significant procedural error, such as . . . improperly calculating[] the Guidelines range[.]" *Gall v. United States*, 552 U.S. 38, 51 (2007).

Guideline § 2B1.1(b)(10)(C)(i) instructs that if an offense involves "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of

identification . . . increase [the offense level] by **2** levels. If the resulting offense level is less than level 12, increase to level 12." The enhancement focuses on the "breeding" of identities, or "affirmative identity theft," where innocuous personal information is fraudulently used, for example, to apply for a loan. *See United States v. Williams*, 355 F.3d 893, 898 (6th Cir. 2003) (citing U.S.S.G § 2B1.1 cmt. background (2000)). The minimum offense level of twelve reflects the difficulty of detecting the crime before "certain harms occur[], such as a damaged credit rating or an inability to obtain a loan." *Id.*

Courts have noted that the enhancement is "rather awkwardly written" and there is a "paucity of helpful case law" interpreting the enhancement. *See, e.g., United States v. Hawes*, 523 F.3d 245, 249, 250 (3d Cir. 2008) (internal quotation marks and citations omitted). At its base, the enhancement requires the Government to demonstrate that one means of identification was used to create a second means of identification. *See, e.g.*, *Williams*, 355 F.3d at 898 ("the . . . enhancement applied because [defendants] used a means of identification, i.e., a social security number of another, to obtain another means of identification, i.e., a bank loan number.").

The application notes for § 2B1.1(b)(10)(C)(i) supply two examples of situations in which the enhancement is applicable, and two where it is not:

> (ii) Examples.- Examples of conduct to which subsection (b)(10)(C)(i) applies are as follows:
>
>> (I) A defendant obtains an individual's name and social security number from a source (e.g., from a piece of mail taken from the individual's mailbox) and obtains a bank loan in that individual's name. In this example, the account number of the bank loan is the other means of identification that has been obtained unlawfully.

> (II) A defendant obtains an individual's name and address from a source (e.g., from a driver's license in a stolen wallet) and applies for, obtains, and subsequently uses a credit card in that individual's name. In this example, the credit card is the other means of identification that has been obtained unlawfully.

(iii) Nonapplicability of Subsection (b)(10)(C)(i).-Examples of conduct to which subsection (b)(10)(C)(i) does not apply are as follows:

> (I) A defendant uses a credit card from a stolen wallet only to make a purchase. In such a case, the defendant has not used the stolen credit card to obtain another means of identification.

> (II) A defendant forges another individual's signature to cash a stolen check. Forging another individual's signature is not producing another means of identification.

U.S.S.G § 2B1.1, Application Note 9(C).

The instant case does not squarely fall into any of the Application Note examples, in large part because the unusual circumstance of the victim and the defendant sharing the same name makes it difficult to determine whose identity was used to create or obtain the credit card. It is undisputed that the card was issued to Robin L., not Johnson, and that § 2B1.1(b)(10)(C)(i) treats the card as a created or obtained means of identification. Thus, the Government bore the burden of demonstrating that Johnson or her co-conspirators made unauthorized use of a means of identification to create or obtain the card, or used the card to create or obtain an additional form of identification. However, the record is almost entirely devoid of information about the card's provenance. The sum of the evidence presented regarding the card was two brief statements at Johnson's trial in the testimony of Secret Service Agent William Jordon, a reference to the card in Johnson's PSR, and a brief exchange among Johnson, her counsel and the district court at Johnson's sentencing hearing.

The credit card did not feature prominently in Johnson's trial, which focused on the fraudulent bank transfers. The only references made to the card were two statements by Agent Jordon, a prosecution witness. On direct-examination Jordon stated that after Johnson was arrested, she "surrendered to us a Wachovia Visa debit card that was related to the account that had been shipped into Memphis. After they changed the information, they shipped out a card into Memphis."[1] On cross-examination, Jordon clarified that Johnson told him that "they intercepted a Wachovia card that was sent to an address in Memphis and that they went and got cash withdrawals off of that Wachovia card."

Johnson's PSR included in its recitation of the offense conduct that "Johnson stated that [Turner] also gave her a Wachovia credit card in the name Robin Johnson. Johnson was taken to a casino in Mississippi where she received $9,000 in cash advances from the credit card." Johnson did not object to this characterization.

Finally, at sentencing, Johnson, her attorney and the district court engaged in the following exchange in an effort to clarify the card's origin:

> THE COURT: . . . [I]s it disputed that your client, that Ms. Johnson had possession of the Wachovia credit card and that she used that credit card to obtain the -- this says $9,000 -- approximately $9,000 in cash advances?
>
> MS. GARNER: No, Your Honor, we cannot dispute that.
>
> THE COURT: All right. So she had the Wachovia credit card. Of course I think you said earlier that it is your position that someone else opened the Wachovia account.

---

[1]Johnson's defense at trial was that she had an informal arrangement with local police to be an informant and that she participated in the conspiracy in order to gather information. The credit card only came to the attention of investigators because Johnson surrendered it.

MS. GARNER:  That is correct, Your Honor.

THE COURT:  But Ms. Johnson possessed the credit card.

THE WITNESS:  Yes, Your Honor.

THE COURT:  From that account?

THE WITNESS:  Yes, Your Honor.

THE COURT:  That was issued as a result of that account.

THE DEFENDANT:  Huh-uh, different accounts. Completely different accounts.

MS. GARNER:  And Ms. Johnson is talking, Your Honor, but she's advising that they were two different accounts.

THE COURT:  Well, let me go about it a different way then. Whichever account it was, is it disputed that Ms. Johnson used a Wachovia credit card account -- excuse me -- a Wachovia credit card that was issued in the name of what I'll call the real Robin L. Johnson to obtain the $9,000 in cash advances from the casino?

MS. GARNER:  We cannot dispute that, Your Honor.

Following this understandably confusing exchange, the Government stated its position that § 2B1.1(b)(10)(C)(i)  applied to the instant case because the conduct involved "using somebody else's information to obtain a credit card they are not entitled to and then going and obtaining money or services on that credit card."  The court agreed, finding that,

> a credit card was then issued from the Wachovia account based upon the Wachovia account to Robin Johnson, and the defendant Robin Lee Johnson took possession of that credit card, and according to the evidence before the court, utilized that credit card to go to a casino in Mississippi where she received roughly $9,000 in cash advances by using the credit card. So it appears to the court that under 2B1.1(b)(1[0])(C)(i), it appears to the court that the enhancement referred to there would be appropriate *based upon this defendant's use of the credit card to obtain the cash advances from the casino in Mississippi*."

7

(emphasis added).  The court made no reference to Jordon's testimony.

We note that both the Government's argument and the court's statement appear to  focus on the use of the credit card.  For the application of § 2B1.1(b)(10)(C)(i), however, it is irrelevant whether the card was used to obtain advances or make purchases.  The enhancement applies to the creation of the card, and specifically to the unauthorized use of a means of identification in order to create the credit card, the second means of identification, or the use of the card to create an additional means of identification.

On appeal, the Government argues that "the defendant, in conspiracy with [others], made unauthorized use of one means of identification (her own name, address and date of birth) to obtain another means of identification (the Wachovia credit card), which the defendant then used to wrongfully obtain money."  The Government neglects to explain how the use of Johnson's  identity was "unauthorized," and, as noted above, the use of the card is not relevant.

The Government further argues the enhancement applies because Johnson "has admitted that the card was issued on an account belonging to the victim with the same name as hers."  This again fails to address whether the card was created through the unauthorized use of a means of identification, or used to create another form of identification.  Notably absent from the record is any information regarding when and how the credit-card account was opened, whether the information about the card-holder was altered, as in the bank account, or what caused the "intercepted" credit card to be sent.  As in the bank account, the co-conspirators may have simply changed the information on the account to match Johnson's and used Johnson's information, not Robin L.'s, to obtain the card.  We need not speculate on every manner in which Johnson could have obtained a

credit card in Robin L.'s name. Johnson may well have engaged in conduct supporting the application of the enhancement. However, the record before us does little more than show that Johnson used a credit card issued in Robin L.'s name to secure $9,000. This alone is insufficient to trigger the application of § 2B1.1(b)(10)(C)(i).

**III**

For the foregoing reasons, we **VACATE** Johnson's sentence and **REMAND** for further sentencing proceeding consistent with this opinion.